UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE LOCAL 7 TILE INDUSTRY WELFARE FUND, THE LOCAL 7 TILE INDUSTRY ANNUITY FUND, THE TILE LAYERS LOCAL UNION 52 PENSION FUND, TRUSTEES OF THE MARBLE INDUSTRY PENSION FUND, THE MARBLE INDUSTRY ANNUITY FUND, TRUSTEES OF THE MARBLE INDUSTRY TRUST FUND, TRUSTEES OF THE BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, and TRUSTEES OF THE INTERNATIONAL MASONRY INSTITUTE, <br><br> Plaintiffs, <br><br> -against- <br><br> JOS. W. CURVINO, INC., and JOSEPH CURVINO, <br><br> Defendants. | 18-CV- <br><br> **COMPLAINT** <br><br><br> **Jury Trial Demanded** |

Plaintiffs, by and through their attorneys, Virginia & Ambinder, LLP, as and for their Complaint, respectfully allege as follows:

## NATURE OF THE ACTION

1. This is a civil action pursuant to sections 502 and 515 of the Employee Retirement Income Security Act, as amended, 29 U.S.C. §§ 1132, 1145 ("ERISA"), and section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185 ("LMRA"), and other applicable law, to collect delinquent contributions to a group of employee benefit plans, and for related relief.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367, and pursuant to 29 U.S.C. §§ 185 and 1132(e)(1).

3. Venue is proper in this judicial district pursuant to 29 U.S.C. §§ 185(a) and 1132(e)(2).

## **THE PARTIES**

4. Plaintiffs Trustees of the Local 7 Tile Industry Welfare Fund, Local 7 Tile Industry Annuity Fund, and Tile Layers Local Union 52 Pension Fund (collectively, the "Tile Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). The Tile Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3). The Tile Funds maintain their principal place of business at 45-34 Court Square, Long Island City, New York 11101.

5. Plaintiffs Trustees of the Bricklayers & Trowel Trades International Pension Fund and International Masonry Institute (the "International Benefit Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). The International Benefit Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3). The International Benefit Funds maintain their principal place of business at 620 F Street, N.W., Washington, D.C. 20004.

6. Plaintiffs Trustees of the Marble Industry Pension Fund, Marble Industry Annuity Fund, and Marble Industry Trust Fund (collectively, the "Marble Funds" together, with the Tile Funds and the International Benefit Funds, as the "Funds") are employer and employee trustees of multiemployer labor-management trust funds organized and operated pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act, 29 U.S.C. § 186(c)(5). The Marble Funds are employee benefit plans within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3). The Marble Funds maintain their principal place of business

at 45-34 Court Square, Long Island City, New York 11101.

7. Defendant Jos. W. Curvino, Inc. ("Curvino Inc.") is a corporation organized under the laws of the State of New Jersey. At relevant times, Curvino Inc. was engaged in business as an employer within the meaning of section 3(5) of ERISA, 29 U.S.C. § 1002(5), and was an employer in an industry affecting commerce within the meaning of section 301 of the LMRA, 29 U.S.C. § 185.

8. Defendant Joseph Curvino is, and at all relevant times was, the owner, operator, and chief executive officer of Curvino Inc.

## BACKGROUND

**The Collective Bargaining Agreements**

9. The Tile Setters and Tile Finishers Union of New York and New Jersey, Local Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the "Tile Union") is a labor organization within the meaning of Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in Section 502 of the Taft-Hartley Act, 29 U.S.C. § 142.

10. The Marble Polishers and Restoration Finishers, Local No. 7 of the International Union of Bricklayers and Allied Craftsmen (the "Marble Union") is a labor organization within the meaning of Section 301 of the Taft-Hartley Act, 29 U.S.C. § 185, and represents employees in an industry affecting commerce as defined in Section 502 of the Taft-Hartley Act, 29 U.S.C. § 142.

11. Ever since in or around 1997, Curvino Inc. was a party to, or manifested an intention to be bound by, collective bargaining agreements (the "Tile CBA") with the Tile Union.

12. Ever since in or around 1997, Curvino Inc. was a party to, or manifested an intention to be bound by, collective bargaining agreements (the "Marble CBA," with the Tile CBA, as the "CBAs") with the Marble Union.

13. Curvino Inc.'s CBAs required it to remit contributions to the Funds in connection with all work performed in the trade and geographic jurisdiction of the respective Unions ("Covered Work").

14. The CBAs' definitions of Covered Work includes the installation of tile/marble products at a job site. A signatory employer is required to use members of the Tile and Marble Unions to perform such work and is required to remit contributions to the Funds in connection with such work.

15. The CBAs definition of Covered Work does not include the pre-installation fabricating of the tile/marble products. A signatory employer is not required to use members of the Tile and Marble Union to perform such work and is not required to remit contributions to the Funds in connection with such work.

16. The CBAs contain "no subcontracting clauses" which prohibit Curvino Inc. from subcontracting or assigning portions of contracts requiring the performance of Covered Work to non-union entities. The CBAs provide that Curvino Inc. shall be responsible for the payment of contributions for Covered Work performed by a non-union subcontractor.

17. The CBAs required Curvino Inc. to make its books and records available to the Funds in order to ensure that Curvino Inc. is complying with its obligations under the CBAs.

18. During such audits, Curvino Inc. would be required to, and did, provide the Funds' auditors with Curvino Inc.'s general ledgers, check registers, lists of its accounts payable, and various other documents.

19. It is common practice, and well understood in the industry, that the Funds' auditors would review a signatory employer's records to, among other things, determine whether the employer improperly subcontracted Covered Work to a non-union entity in violation of the no subcontracting clause in its collective bargaining agreement.

**Joseph Curvino and Curvino Inc.'s Illegal Scheme to Defraud the Funds**

20. Starting in or around 2003, Joseph Curvino concocted and carried out an elaborate illegal scheme to defraud the Funds.

21. Mr. Curvino, on Curvino Inc.'s behalf, would enter into contracts to perform commercial stone installation work that fell within the scope and jurisdiction of Curvino Inc.'s CBAs.

22. Mr. Curvino would bid this work at union rates based on the assumption that the work would be performed by members of the Tile and Marble Unions, as required by Curvino Inc.'s CBAs.

23. Mr. Curvino would then have Curvino Inc. subcontract the stone installation work to The Marble Factory, Inc. ("TMF"), a non-union company, in violation of the CBAs' no-subcontracting clauses.

24. Neither Curvino Inc. nor TMF remitted contributions to the Funds in connection with Covered Work performed by TMF's employees.

25. For over 15 years, Curvino Inc. has reaped a windfall by bidding projects at union rates only to have significant portions of the work performed by TMF's far cheaper non-union employees.

26. There were three main components to Mr. Curvino's and Curvino Inc.'s scheme.

27. First, Mr. Curvino generally had TMF perform stone installation work at night, after Curvino Inc.'s union workers left the job site; the purpose being to avoid the Tile and Marble Unions detecting that Curvino Inc. was using non-union employees to perform Covered Work.

28. Second, Mr. Curvino carefully selected which projects Curvino Inc. would subcontract to the non-union TMF. Curvino Inc. would self-perform commercial stone installation work only on high profile projects, such as the Apple Store in Grand Central Station, New York, New York, where Curvino Inc.'s use of the non-union TMF would likely be detected. Curvino Inc. would subcontract commercial stone installation work to TMF on lower-profile projects such as Blue Cross Blue Shield, HSBC Bank, and Ernst & Young.

29. Third, Mr. Curvino falsified Curvino Inc.'s general ledgers and other financial records with respect to payments issued to TMF. Curvino Inc. deceptively coded TMF payments as "fabricators/suppliers," despite the fact that TMF was actually performing commercial stone installation work for Curvino Inc. Mr. Curvino had TMF doctor its invoices in a similar fashion. Mr. Curvino was aware that, when the Funds audited Curvino Inc., the Funds' auditors would review Curvino Inc.'s general ledgers and other financial records and would request invoices with respect to any suspicious payments to non-union subcontractors. Mr. Curvino explicitly advised Ed Connors, a former officer of Curvino Inc., that the purpose of falsifying Curvino Inc.'s financial records was to avoid the Funds' auditors detecting that Curvino Inc. was illegally using the non-union TMF to perform Covered Work.

30. For example, the Funds' last completed audit of Curvino Inc. covered the period 2014-15. During this audit, the Funds' auditors requested and received copies of Curvino Inc.'s general ledgers. These general ledgers classified payments to TMF as for "fabricators/suppliers." Accordingly, the auditors did not include findings relating to work improperly subcontracted to

-6-

TMF, as they normally would have if the general ledgers had properly classified the payments as for installation work.

31. Mr. Curvino's and Curvino Inc.'s illegal scheme has likely defrauded the Funds out of millions of dollars in contributions. During 2016-17 alone, Curvino Inc. made payments to TMF in excess of $1,000,000 in connection with commercial stone installation work Curvino Inc. improperly subcontracted to this non-union company.

### THE FUNDS' FIRST CLAIM FOR RELIEF AGAINST CURVINO INC.
(**Liability for Violation of the CBAs' No Subcontracting Clause/ Liability for Delinquent Contributions**)

32. The Funds repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

33. Section 301 of the LMRA, 29 U.S.C. § 185, authorizes the Funds, as third-party beneficiaries to the CBAs, to file a federal lawsuit regarding an employer's violation of its collective bargaining agreement.

34. Section 515 of ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145.

35. The CBAs prohibit Curvino Inc. from subcontracting or assigning contracts requiring the performance of Covered Work to non-union entities.

36. In violation of the CBAs, Curvino Inc. subcontracted the performance of Covered Work to the non-union TMF.

37. Curvino Inc. failed to remit any contributions with respect to the Covered Work performed by TMF.

38. In connection with Covered Work TMF performed for Curvino Inc., the Funds are entitled to recover from Curvino Inc. any delinquent contributions, interest, liquidated damages, attorneys' fees and costs, and other legal and equitable relief pursuant to the CBAs, Section 301 of the LMRA, 29 U.S.C. § 185, and Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145.

**THE FUNDS' SECOND CLAIM FOR RELIEF AGAINST JOSEPH CURVINO**
(Individual Liability for Defrauding the Funds)

39. A controlling corporate official who defrauds or conspires to defraud a benefit fund of required contributions is liable in his or her individual capacity.

40. At all relevant times, Joseph Curvino was the owner, operator, and chief executive officer of Curvino Inc.

41. Mr. Curvino knowingly implemented and carried out Curvino Inc.'s fraudulent scheme to use the non-union TMF to perform Covered Work. Mr. Curvino ensured that Curvino Inc. falsified its financial records with respect to TMF to avoid the Funds' auditors detecting Curvino Inc.'s scheme and he ensured that Curvino Inc. did not report hours worked by TMF, as required, when Curvino Inc. remitted contributions to the Funds.

42. The Funds and their auditors reasonably relied on the accuracy of Curvino Inc.'s reports of hours of Covered Work performed and the accuracy of Curvino Inc.'s financial records' reports that TMF was doing non-covered fabrication work for Curvino Inc. Accordingly, Mr. Curvino and Curvino Inc.'s fraudulent scheme to violate the CBAs' no-subcontracting clause went undetected for over the last 15 years.

43. In connection with Covered Work TMF performed for Curvino Inc., the Funds are entitled to recover from Mr. Curvino, in his individual capacity, any delinquent contributions,

interest, liquidated damages, attorneys' fees and costs, and other legal and equitable relief pursuant to the CBAs, Section 301 of the LMRA, 29 U.S.C. § 185, and Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145.

## DEMAND FOR JURY TRIAL

44. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Funds demand trial by jury in this action of all issues so triable.

**WHEREFORE,** the Funds respectfully request that this Court:

(1) On the Funds' First Claim for Relief, issue an order finding, in connection with Covered Work TMF performed for Curvino Inc., that Curvino Inc. is liable to the Funds for any delinquent contributions found to be due and owing during the course of this litigation and associated interest, liquidated damages, attorneys' fees and costs, and any other legal and equitable relief pursuant to the CBAs, Section 301 of the LMRA, 29 U.S.C. § 185, and Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145;

(2) On the Funds' Second Claim for Relief, issue an order finding, in connection with Covered Work TMF performed for Curvino Inc., that Joseph Curvino is individually liable to the Funds for any delinquent contributions found to be due and owing during the course of this litigation and associated interest, liquidated damages, attorneys' fees and costs, and any other legal and equitable relief pursuant to the CBAs, Section 301 of the LMRA, 29 U.S.C. § 185, and Sections 502 and 515 of ERISA, 29 U.S.C. §§ 1132 and 1145; and

(3) Award the Funds such other and further relief as the Court may deem just and proper.

Dated: New York, New York
July 20, 2018

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**

By: /s/
Todd Dickerson, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
(212) 943-9080
Tdickerson@vandallp.com
*Attorneys for Plaintiffs*

-10-